242 So.2d 16 (1970)
Alberta T. WILLIAMS
v.
F. W. WOOLWORTH CO. et al.
No. 4190.
Court of Appeal of Louisiana, Fourth Circuit.
December 7, 1970.
James M. Colomb, Jr., Guste, Barnett & Colomb, New Orleans, for Alberta T. Williams, plaintiff-appellee.
Claude D. Vasser, Jones, Walker, Waechter, Poitevent, Carrere & Denegre, New Orleans, for F. W. Woolworth Co. et al., defendants-appellants.
Before CHASEZ, LEMMON and TAYLOR, JJ.
CHASEZ, Judge.
Plaintiff-appellee, Alberta Williams, filed suit for damages seeking recovery for her "great humiliation, mortification, embarrassment and emotional distress" alleged to be the result of slanderous actions of the employees of F. W. Woolworth Company which arose from an incident that occurred at the Woolworth store at 1031 Canal Street in New Orleans, Louisiana, on the afternoon of May 12, 1966. The incident concerned whether she had paid for a small amount of loose candy which she was carrying in her shopping bag.
*17 After a trial on the merits, the trial judge, without written reasons, awarded plaintiff $1,500.00 damages from which defendants have appealed. Plaintiff answered the appeal seeking an increase in damages from $1,500.00 to $5,000.00.
Alberta Williams testified that she entered Woolworth's at Canal and Rampart Streets after buying some patterns for dressmaking at Krauss' Department Store which is across the street. She stated that she stopped at the candy counter in the front part of the store and bought nineteen cents worth of candy for which she received a receipt. She then took some of the candy out of the bag and placed the candy bag into her purse. While walking through the store trying to find "stiffening" to put into the dresses she was planning to make, she dropped three candies from her hand into the bottom of her shopping bag. As she walked to the center of the store the Assistant Manager approached her and asked what she had in her bag.
Mr. Hatfield, the Assistant Manager, testified that the candy salesgirl informed him that she had seen a lady putting candy into a shopping bag. Mr. Hatfield stated he went to the front of the store with the salesgirl and she pointed out the plaintiff as the lady she had seen putting candy into her bag. Mr. Hatfield observed plaintiff as she walked away from the candy counter area and it was at this time that he approached her.
Up to this point Mr. Hatfield's actions were perfectly reasonable. He was acting on information brought to his attention by one of the employees of Woolworth's.
When Mr. Hatfield asked Mrs. Williams what she had in her bag she told him she had some patterns and some candies, but he was not satisfied and demanded to examine her shopping bag. After several such demands Mrs. Williams said she would not allow Hatfield to examine her bag but that she would give it to the Police to examine.
At this request, Mr. Hatfield testified, he summoned a Security Guard. Meanwhile plaintiff proceeded to walk out the side entrance of the store, Mr. Hatfield followed her, requesting that she return, which she did voluntarily.
Mrs. Williams was taken into a room at the back of the store and there turned her purse and shopping bag over to the guard.
Mr. Hatfield stated to plaintiff that the store reserved the right to search all handbags. He took her back out to the middle of the store to where a notice was posted. He asked her if she could read and when she replied negatively he read the notice to her. Then Hatfield told her to go on back to the rear room. He evidently did not return with her.
Her purse and bag were searched, the candy was found and taken to the candy counter to be weighed. On being weighed it proved to be nineteen cents worth of candy. Mrs. Williams produced her receipt and the security guard apologized to her.
Mr. Hatfield had testified that when he first approached Mrs. Williams she was unable to produce a receipt for the candy. She explained that in her testimony by stating that when he became "so persistent" in demanding to examine her bag that she decided not to show anything to anyone but the Police. Mr. Hatfield could not testify that Mrs. Williams did not produce a receipt after the candy had been weighed because he was not present at that time.
Mrs. Williams testified that as a result of the Assistant Manager's following her through the store demanding to see into her shopping bag, reading the sign to her and her treatment in general, all in the presence of the other employees, she became nervous, overwrought and began to cry; that she was humiliated by the commotion caused by the incident, particularly because it was witnessesd by two members of an organization to which she belonged.
Mr. Hatfield testified that he handled the matter in as discreet a manner as possible *18 and that no attention was brought to the plaintiff.
This testimony is rebutted not only by Mrs. Williams but also by two witnesses who were called on her behalf. They were the members of the Eastern Star whom Mrs. Williams had adverted to in her testimony. Miss Alma Hollie testified:
"Q. Did you see any commotion in the store?
A. Oh, yes, I did.
Q. Tell the Court in your words just what happened, what you saw.
A. Well, when I was in the store I seen the excitement, I didn't know what it was, so I just went on down the aisle to see what it was, so I say, Oh, I know her, I say, she's an Eastern Star, I wonder what she done, shoplifting, so I followed her and she was arguing with one man and after he's arguing with her he went to the back, and when he went to the back another one come out and I was still looking, and after that she was arguing with the man and he was arguing with her, but I couldn't hear what they say, because they had some people, you know, looking. So she went outhe went out and when he come back he come in with a police and they went on to the back.
Q. That's all you know about it?
A. Well, when they went to the back another man come out, they had three of them come out, see, when the other one come out they stood up there and arguing and he looked up on the sign and say something and I heard her say, well, it say shoplifting, and she was crying and I say, what's the matter Mrs. Williams, what you crying so much about?
Q. There were other people besides you watching all this?
A. Oh, yes, had a gang, you know how when excitement in the ten cent store, was watching them, and I said, well, she ain't got nothing there."
Miss Elaine Miles' testimony was similar and corroborated that of Mrs. Williams and Miss Hollie. Her testimony was:
"Well, I was in the store and they had a crowd of people, you know, and, well, they had a lot of fuss going on, so I just walked over to see what was going on and I seen this lady, you know, and since I recognized her, fact that made me stay with the crowd and watch what were going on, so I followed the crowd, you know, in the store and everything and they went in the back, in the room and, well, I just followed the crowd, that's all, see what was going on and the fellow was fussing, you know, in other words, he was accusing her of something and I just wanted to see was it true or not, that's why I kept on following the crowd."
Article 215 of the Louisiana Code of Criminal Procedure provides that a merchant may use reasonable force to detain a person whom he reasonably believes to have committed a theft of merchandise. Under the cases the merchants are granted a qualified privilege against defamatory remarks which may be made. Eason v. Weingarten, Inc., La.App., 219 So.2d 516 (3rd Cir. 1969); Banks v. Food Town, La.App., 98 So.2d 719 (1st Cir. 1957).
A qualified privilege may be abused if the actions of the merchant are unreasonable. As stated by Judge McBride in Chretien v. F. W. Woolworth Company, La.App., 160 So.2d 854 (4th Cir. 1964):
"The store manager may have had a perfect right to question plaintiff whom he suspected of shoplifting, but the rights and qualified privilege granted by the statute do not clothe the storekeeper with immunity when its manager resorted to slander. The accusation of theft *19 against plaintiff made in the presence of other persons was at the risk of the storekeeper if the suspicion of shoplifting proved baseless."
The record taken as a whole convinces us that the management's actions toward Mrs. Williams were unreasonable and thus not protected by the qualified privilege. For these reasons we affirm the trial court with respect to the issue of liability.
Plaintiff answered the appeal seeking an increase in damages from $1,500.00 to $5,000.00. Defendants, naturally, plead that the award was excessive.
On appeal the lower court's award of general damages for injuries should not be disturbed unless the reviewing court finds an abuse of the fact trier's great discretion in this regard, especially considering that each case must be evaluated according to its own peculiar facts and circumstances. The awards of other cases are relevant only insofar as they may indicate that the present award is so greatly out of proportion with others as to amount to an abuse of the trial court's wide discretion. Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127 (1967); Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64 (1964); Desselle v. Wilson, La.App., 200 So.2d 693 (3rd Cir. 1967). Considering the facts and circumstances of the present case we are not in a position to state that the court a quo abused its discretion. An award of $1,500.00 is neither excessive nor inadequate but falls within the range of awards prescribed by other cases and will, thus, not be disturbed by this Court.
For the foregoing reasons, the judgment in favor of plaintiff, Alberta Williams, and against defendants, F. W. Woolworth Company and The Travelers Insurance Company, jointly and in solido, in the amount of $1,500.00 is affirmed. Costs assessed to defendants-appellants.
Affirmed.